UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Farmers Insurance Exchange,

    Plaintiff,

v.                                    MEMORANDUM OPINION
                                        AND ORDER
                                        Civil No. 07-862

Kathleen Hallaway, David Ericson,
Ellie Singer and Minnesota Youth
Soccer Association,

    Defendant.

_____

    Roger H. Gross and Timothy J. Crocker, Gislason & Hunter LLP for and on behalf of Plaintiff Farmers Insurance Exchange.

    Donald Chance Mark, Jr. and Edward E. Beckman, Fafinski Mark & Johnson, P.A. for and on behalf of Defendants David Ericson, Ellie Singer and Minnesota Youth Soccer Association.

    Mark R. Miller, Saliterman & Siefferman for and on behalf of Kathleen Hallaway.

_____

    This matter is before the Court on Plaintiff Farmers Insurance Exchange's

("Farmers") motion for summary judgment.

    This is a declaratory judgment action in which Farmers seeks a declaration

that the insurance policy at issue does not provide coverage for a civil judgment

1

obtained by Defendants David Ericson, Ellie Singer and the Minnesota Youth Soccer Association ("MYSA") (collectively referred to as the "MYSA defendants") against Defendant Kathleen Hallaway.

Background of the Underlying Action

The MYSA defendants brought an action in state court against Hallaway, Eric Hawkins, and others, because of a series of e-mails that were sent, either anonymously or by Hallaway, that contained defamatory language against Ericson and Singer, who were volunteers for the MYSA.  The suit included allegations of defamation, intentional infliction of emotional distress, and tortious interference with contract, as well as a claim for punitive damages.  The defendants in the underlying suit were upset with the manner in which Ericson, Singer and the MYSA handled a number of matters, including the suspension of Eric Hawkins as a coach, the suspension or disaffiliation by the MYSA of the Elk River United Soccer Club and the perceived failure to investigate an adult accused of stalking/photographing minor girls playing soccer.  The nature of the e-mails, however, went beyond merely asserting a complaint.

As an example, one email sent from the "moccasoccer@hotmail.com" account to several members of different soccer associations, and signed by

Hallaway and several others, stated:

> Mr. Ericson orchestrated the placing the Elk River United Soccer Club into bad standing, and subsequently attempted to blackmail the mother of a molestation victim . . . An investigation by Mr. Ericson concluded [the alleged stalker's name] actions were appropriate.  We are demanding the immediate resignation of Mr. Ericson from all positions with the [MYSA}.

Farmers' Ex. U.

Another email sent from the "moccasoccer@hotmail.com" account, but signed by "The Parents of P.A.S.S." stated:

> [O]ne of our mothers filed a complaint for harassment and providing false information against Ellie Singer . . . The complaint includes Ellie's refusal to process several complaints and providing false information repeatedly, including deceptions . . . and Ellie's extortion of a former ERU coach.

Farmers' Ex. V.

Unsigned e-mails from the hotmail account were also sent to Ericson's employer, accusing Ericson of extortion and fraud.  Farmers' Ex. W.  Although no one admitted to sending the e-mails from the hotmail account, it was determined that some were sent from a coffee shop, and that Eric Hawkins had used his credit card at the same shop at the time the e-mails were sent.  See Farmers' Ex. G, p. 103-105.

Hallaway also sent e-mails from her personal account. In one such e-mail, Hallaway described an incident in which she and others observed an individual engaging in questionable behavior at a soccer practice, and then accused Singer of not acting on her complaints regarding said individual. Second Beckman Declaration, Ex. B. See also, Exs. C and D.

Eventually, four of the defendants in the underlying suit settled with the MYSA defendants: two for $1,500 and a letter of apology, one for $10,000 and Hawkins settled for $220,000. Hallaway did not settle the case against her, and the matter went to trial. At the conclusion of the trial, the district court directed a verdict on the defamation claims, and the jury found Hallaway liable for the intentional infliction of emotional distress and punitive damages totaling $550,000. Following post trial motions, the verdict was reduced by $50,000. Farmers' Ex. F.

The Policy

The policy at issue is a homeowners policy covering the period January 10, 2005 to January 2006. The relevant policy language provides coverage for "damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence."

Farmers' Ex. R, Section II - Liability, p. 13.  Personal injury is defined as "any injury arising from . . (3) libel, slander, defamation of character . . ." <u>Id.</u>  An occurrence is defined as "an accident including exposure to conditions which results during the policy period in bodily injury or property damage.  Repeated or continuous exposure to the same general conditions is considered to be an occurrence."  <u>Id.</u>, Definitions, p. 4.

    The policy also provides:

> At our expense and with attorneys of our choice, we will defend an insured against any covered claim or suit.  We are not obligated to pay defense costs, including attorneys' fees of any claim or suit where you select an attorney not chosen by us . . . We may investigate and settle any claim or suit that we consider proper.

<u>Id.</u>, p. 13.

    The policy excludes from coverage the following: bodily injury, property damage or personal injury which is caused intentionally by or at the direction of an insured or that results from any occurrence caused by an intentional act of any insured where the results are reasonably foreseeable.  <u>Id.</u> Section II - Exclusions, p. 15.  Further, the policy excludes from coverage punitive or exemplary damages or the cost of defense related to such damages.  <u>Id.</u> p. 14.

Finally, the policy provides that in the case of an occurrence, the insured must, as soon as possible, give the insurer written notice of the occurrence, with names and addresses of the claimants and to promptly send the insurer any legal papers received and to cooperate and assist in any matter relating to the claim. Id., Section II - Conditions, p. 16-17.

Farmers asserts that Hallaway did not provide it notice of the underlying suit until after the verdict had been rendered against her.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is , pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of

Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Analysis

Under Minnesota law, "the initial burden of proof is on the insured to establish a prima facie case of coverage." SCSC Corp. v. Allied Mutual Ins.Co., 536 N.W.2d 305, 311 (Minn. 1995) (citing Boedigheimer v. Taylor, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970)). "The policy must be read as a whole, and unambiguous language must be accorded its plain and ordinary meaning." Id. at 311 (citing Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 652 (Minn.1986)). Any ambiguity is construed in favor of the insured. Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 307 (Minn. 1995).

1. **No coverage for Punitive Damage Awards**

Farmers first argues that the policy clearly excludes coverage for a punitive damages award. Ex. R, p. 14. The MYSA defendants do not take a position on whether the policy covers punitive damages. As the policy unambiguously excludes coverage for punitive damages, Farmers' motion, as to the punitive damages award, will be granted.

2. **Intentional Act Exclusion**

Farmers asserts that the remaining portion of the judgment for defamation

and intentional infliction of emotional distress is excluded as the policy provides coverage only for an occurrence, which is defined as an accident. Farmers' Ex. R. p. 4. Intentional acts are specifically excluded. Id. p. 15.

Minnesota courts have defined "accidents" as "unexpected, unforeseen or undesigned happenings." Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 611 (Minn. 2001) (citing Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 358, 65 N.W.2d 122, 126 (1954)). There must also be a lack of specific intent to injure. Id., 628 N.W.2d at 612. Minnesota courts have also recognized an inferred intent to injure "when the insured knew or should have known that a harm was substantially certain to result from the insured's conduct." Id., at 613. Whether the court should infer an intent to injure must be based on the specific facts before it. Id.

Farmers argues that the damages award for defamation and intentional infliction of emotional distress arose from intentional conduct, and that based on the specific facts supporting the damages award, the Court may infer that Hallaway acted with an intent to harm. Accordingly, the damages award is excluded by the terms of the policy.

The MYSA defendants do not take a position with respect to damages for intentional infliction of emotional distress. Given the nature of this particular claim, there can be no dispute that damages awarded for intentional infliction of emotional distress are excluded under the terms of the intentional acts exclusion. With respect to the damages awarded based on defamation, however, the MYSA defendants argue that such damages are covered by the policy. It is their position that damages for "personal injury" should not be limited to those arising from an occurrence, as "personal injury" is defined in the policy to include "libel, slander, defamation of character" and other acts that can only be understood to be intentional acts, such as false arrest or malicious prosecution. Thus, it doesn't make sense to limit personal injury to accidents, since the very definition of personal injury includes intentional conduct. Similarly, the MYSA defendants argue that the definition of "defamation" does not distinguish between negligent and intentional defamation. Thus, anyone reading a Farmers policy would understand it to cover all forms of defamation. The MYSA defendants further argue that as the Court should not limit coverage for personal injury to accidents, the "inferred intent" argument is not relevant and the exclusion does not apply. Finally, the MYSA defendants argue that Minnesota law does not recognize a

cause of action for negligent defamation.  See Wallin v. Minnesota Dept. of Corrections, 598 N.W.2d 393, 401 (Minn. Ct. App. 1999).  Rather, defamation is treated as an intentional tort - as evidenced by the fact that such claims are covered by the two year statute of limitation for intentional torts, and the elements of a defamation claim reflect the intentional nature of the claim.

The Court first notes that Minnesota law does recognize a claim of negligent defamation.  See, Moreno v. Crookston Times Printing, 610 N.W.2d 321, 329 (Minn. 2000) (adopting negligence standard for private individual suing media for defamation); Britton v. Koep, 470 N.W.2d 518, 520 (Minn. 1991)(defamation claim involving public official)[1].  See also Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., 260 F.3d 742, 746-47 (7th Cir. 2001) (finding that intent to injure is not an element of a defamation claim, recognizing that "defamation is often not intended or expected to injure anyone.")  The Court further rejects the MYSA defendants' argument that as the definition of "personal injury" does not distinguish between negligent and intentional defamation, both types are

---

[1] While Britton does involve a probation officer, which Minnesota courts deem a public official, there is language in the case recognizing negligent defamation brought by a private person - "If, on the other hand, Britton is a private individual, then he may recover damages by showing that Koep was merely negligent when she made false statements about his behavior." Britton, 470 N.W.2d at 520.

covered by the policy.

When determining whether conduct is accidental or intentional, Minnesota holds that the courts must look to the intent of the actor. In American Family, the court interpreted an "accident" policy by first recognizing that the word accident "encompasses both the acts of the insured and the consequences of the insured's acts." Id. 628 N.W.2d at 609-11. The court further recognized that "accidental conduct and intentional conduct are opposite sides of the same coin. The scope of one in many respects defines the scope of the other." Id. at 611. The court concluded that "in analyzing whether there was an accident for purposes of coverage, lack of specific intent to injure will be determinative, just as it is in an intentional act exclusion analysis." Id., at 612.

Applying this analysis to the case at bar, the policy will not provide coverage for the damages awarded on the defamation claim if the facts support a finding that Hallaway intended to harm the MYSA defendants when she sent or participated in the sending of the defamatory emails. On this record, however, no such finding can be made because Hallaway's negligence, or whether she acted with an intent to injure, was not essential in finding her liable on the defamation claim. See Rohrer v. Rick, 529 N.W.2d 406 (Minn. Ct. App. 1995). See

also, Rouse v. Dunkley & Bennett, P. A., 520 N.W.2d 406, 410 (Minn.1994) (elements of a defamation claim are: (1) a false statement; (2) communication of the statement to a third party; and (3) resulting harm to the plaintiff's reputation and standing in the community). Because Hallaway's intent to injure is determinative of coverage, and because there are genuine issues of material fact as to whether Hallaway acted with an intent to injure, summary judgment is not appropriate with respect to the defamation claim.

### 3. Lack of Notice - Prejudice

The policy at issue also requires the insured to give prompt notice to the insurer of a claim and to forward legal papers to the insurer promptly. Defendant Hallaway admits that she did not provide notice until post-verdict - in December 2006.[2]

Notice requirements in insurance policies are meant to give insurers "an opportunity for prompt investigation so as to protect itself against fraudulent or exorbitant claims and, while the matter is fresh in the minds of all, to appraise

---

[2] Hallaway, in her brief, explains that she did not know that she was covered under the Farmers' policy until post-verdict, as she was going through a divorce in January 2006, and it was her understanding that she was removed as an insured under the marital home policy when she moved out and bought a condo.

and determine a disposition by way of settlement or defense." Sterling State Bank v. Virginia Surety Co., 173 N.W.2d 342 (Minn. 1969). Lack of notice does not, in and of itself, establish prejudice. Rather, Farmers must show that during the period where notice should have been given, the insurer was prejudiced in an articulable manner. Hooper v. Zurich American Ins. Co., 552 N.W.2d 31, 36 (Minn. Ct. App. 1996) (citing Reliance Ins. Co. v. St. Paul Ins. Cos., 307 Minn. 338, 341, 239 N.W.2d 922, 924-25 (1976)); North Star Mut. Ins. Co. v. Midwest Family Mut. Ins. Co., 634 N.W.2d 216 (Minn. Ct. App. 2001) (finding that insurer must demonstrate that its inability to participate in settlement negotiations resulted in actual prejudice).

Farmers argues that it has been prejudiced by Hallaway's late notice because it was not able to defend and thereby control the defense of the case. Farmers argues it was denied the ability to choose experienced counsel, and to participate in settlement negotiations. Farmers notes that four other defendants in the underlying case settled prior to trial for amounts as little as $1,500 and $10,000. Farmers argues that had it had experienced counsel present, counsel would have had settlement funds available and would have settled the matter prior to trial.

The Court finds that fact questions exist as to whether Farmers was prejudiced by lack of notice in this case. Whether Farmers would have settled this case early is speculative. The MYSA defendants point out that Hallaway never apologized for her e-mails, and that without a written apology, the MYSA defendants would not have settled for a minimal amount. In addition, one of the defendants, Eric Hawkins settled for $220,000. Given the range of settlements entered into, the amount Farmers would have settled for is clearly speculative. Accordingly, Farmers' motion for summary judgment on the issue of prejudice must be denied.

### 4. Applicable Policy Periods

Finally, the parties challenge how many policy periods are applicable in this case. Farmers asserts that only one policy period is applicable, as the defamatory e-mail campaign should be considered one occurrence. Farmers notes that "occurrence" is defined in the policy to include "[r]epeated or continuous exposure to the same general conditions is considered to be one occurrence." Farmers Ex. R, p. 4. Liability is further limited for one occurrence, irregardless if the occurrence spans over more than one policy period. Id., p. 16.

14

The MYSA defendants argue that each defamatory e-mail was a discrete event that gave rise to damages, and as the defamatory e-mail campaign covered three policy periods, from September 2003 to October 2005, each policy period applies, citing to Wooddale Bldrs., Inc. v. Maryland Cas. Co., 722 N.W.2d 283, 295 (Minn. 2006).

Minnesota does follow the actual injury rule to determine which insurance policies have been triggered.  Id. at 292.  Notwithstanding this rule, the policy at issue limits liability to one occurrence.  To determine whether a series of events, such as at issue here, should be considered related or one occurrence, the Court should consider the following factors: "whether the acts are connected by time, place, opportunity, pattern, and most importantly method or modus operandi." American Commerce Ins. v. Minn. Mut. Fire, 551 N.W.2d 224, 231 (Minn. 1996). Applying this analysis, the court in American Commerce found that an embezzlement scheme by an employee was considered two occurrences for insurance coverage purposes, even though there over 150 incidents of embezzlement that took place, because the employee used two distinct methods of embezzlement.  Id. at 230.

In this case, the defamatory e-mail scheme must be considered a series of related acts. The e-mail scheme commenced due to Hallaway's and others' concern about an individual they believed was acting suspiciously around their children at soccer practice, and they continued the scheme because they did not get the response they wanted from the MYSA defendants. Under these circumstances, the Court finds that the e-mail campaign should be considered one occurrence, and that liability under the policy is limited as provided therein.

IT IS HEREBY ORDERED that Plaintiff Farmers Insurance Exchange's Motion for Summary Judgment [Doc. No. 23] is GRANTED in part and DENIED in part as follows: The Policy does not provide coverage for damages awarded as punitive damages, or damages attributable to the claim for intentional infliction of emotional distress. A question of fact exists as to whether the Policy provides coverage for damages attributable to the defamation claims.

Date: July 6, 2008

s / Michael J. Davis
Michael J. Davis, Chief Judge
United States District Court